MARSTILLER, J.
 
 *
 

 This is the first so-called
 
 “Engle
 
 progeny” case to reach a district court of appeal following the Florida Supreme Court’s decision in
 
 Engle v. Liggett Group, Inc.,
 
 945 So.2d 1246 (Fla.2006).
 
 Engle
 
 began as a smokers’ class action lawsuit filed in 1994 against cigarette companies and tobacco industry organizations seeking damages for smoking-related illnesses and deaths. The class included all Florida “ ‘citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to ciga
 
 *1063
 
 rettes that contain nicotine.’ ”
 
 Id.
 
 at 1256. The tobacco company defendants included the appellant in this case, R.J. Reynolds Tobacco Company (“RJR”). In
 
 Engle,
 
 the supreme court decertified the class, but allowed certain jury findings from the class action to have res judicata effect in any subsequent lawsuits by individual class members seeking damages from the defendants. RJR appeals from a final judgment in one such action, seeking reversal of the compensatory and punitive damage awards.
 

 RJR primarily contends that the trial court gave the findings approved in
 
 Engle
 
 overly broad preclusive effect and thus relieved the plaintiff below, Matilde Martin, of her burden to prove legal causation on her negligence and strict liability claims. RJR also asserts Mrs. Martin failed to prove the reliance element of her fraudulent concealment claim, and that the punitive damage award is excessive and unconstitutional. For the reasons that follow, we find the trial court correctly applied
 
 Engle
 
 and Mrs. Martin produced sufficient independent evidence to prove RJR’s liability for her husband’s death. We conclude further the punitive damage award is neither excessive nor violative of RJR’s due process rights.
 

 I. BACKGROUND
 

 A. Engle v. Liggett Group, Inc.
 

 The trial proceedings in the
 
 Engle
 
 class action were divided into three phases. In Phase I the jury was to consider “common issues relating exclusively to the defendants’ conduct and the general health effects of smoking” and the class’s entitlement to punitive damages. Phase II would determine whether the three class representatives received compensatory damages and the amount of class punitive damages if entitlement was established.
 
 Engle,
 
 945 So.2d at 1256-57. Liability to and compensatory damages for each of the estimated 700,000 class members would be decided in Phase III.
 
 Id.
 
 at 1258. Phase I concluded with a verdict finding the evidence sufficient to prove strict product liability; fraud and misrepresentation; fraud by concealment; civil conspiracy by misrepresentation and concealment; breach of implied warranty; breach of express warranty; negligence; and intentional infliction of emotional distress.
 
 Id.
 
 at 1255. The jury also found the class entitled to punitive damages.
 
 Id.
 
 at 1256-57. In Phase II, the jury awarded $12.7 million in compensatory damages to the class representatives and $145 billion in punitive damages to the entire class.
 
 Id.
 
 at 1257. Before Phase III proceedings began, the defendants appealed the verdicts.
 

 The appeal went first to the Third District Court of Appeal
 
 sub nom. Liggett Group, Inc. v. Engle,
 
 853 So.2d 434 (Fla. 3d DCA 2003), then to the Florida Supreme Court which made the following rulings pertinent to the case before us. First, the court vacated the punitive damage award because, with no compensatory damage award to the class for comparison, the court could not determine whether the punitive damages were unconstitutionally excessive. 945 So.2d at 1264-65, 1276. Second, the court decertified the class for Phase III, finding class treatment infeasible “because individualized issues such as legal causation, comparative fault, and damages predominate,” and allowed class members to file individual lawsuits within one year of the court’s mandate.
 
 Id.
 
 at 1268, 1277. Third, the court “retain[ed] the jury’s Phase I findings other than those on the fraud and intentional infliction of emotion [sic] distress claims, which involved highly individualized determinations,” and gave these “common core findings ... res judicata effect” in any subse
 
 *1064
 
 quent individual actions by class members.
 
 Id.
 
 at 1269.
 

 As a result,
 
 Engle
 
 class members opting to sue individually do not have to prove up the following matters found by the Phase I jury
 
 (“Engle
 
 findings”): (1) [generic causation] that smoking cigarettes causes aortic aneurysm, bladder cancer, cerebrovascular disease, cervical cancer, chronic obstructive pulmonary disease, coronary heart disease, esophageal cancer, kidney cancer, laryngeal cancer, lung cancer, pregnancy complications, oral cavity/tongue cancer, pancreatic cancer, peripheral vascular disease, pharyngeal cancer, and stomach cancer; (2) [addiction/dependence] that cigarettes containing nicotine are addictive or dependence producing; (3) [strict liability] that the defendants placed cigarettes on the market that were defective and unreasonably dangerous; (4) [fraud by concealment] the defendants concealed or omitted material information, not otherwise known or available, knowing the material was false or misleading, or failed to disclose a material fact, concerning or proving the health effects or addictive nature, or both, of smoking cigarettes; (5) [civil conspiracy-concealment] that the defendants agreed to conceal or omit information regarding the health effects of cigarette smoking or the addictive nature of cigarettes intending that smokers and the public would rely to their detriment; (6) [breach of implied warranty] that the tobacco company defendants sold or supplied cigarettes that were defective; (7) [breach of express warranty] that the tobacco company defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by the defendants; and (8) [negligence] the tobacco company defendants failed to exercise the degree of care which a reasonable cigarette manufacturer would exercise under like circumstances.
 
 Id.
 
 at 1276-77. The supreme coui't noted, however, that the Phase I jury did not consider whether class members relied on the defendants’ statements or omissions or whether class members were injured by the defendants’ conduct. Therefore Phase I yielded no determination as to the defendants’ liability to any individual class member.
 
 Id.
 
 at 1263.
 

 B. Martin v. R.J. Reynolds Tobacco Co.
 

 Benny Martin was a long time smoker of Lucky Strike, a brand of cigarettes manufactured and sold by RJR, who contracted lung cancer and died in 1995.
 
 [1]
 
 His widow sued RJR as an
 
 Engle
 
 class member seeking damages for her husband’s death.
 
 [2]
 
 A jury trial proceeded on five claims: strict liability; fraud by concealment; conspiracy to commit fraud; negligence; and punitive damages. The parties filed a Joint Pretrial Memorandum admitting several facts which required no proof at trial, including that every Lucky Strike Benny Martin smoked contained nicotine, nicotine in cigarettes is addictive, and smoking cigarettes causes lung cancer.
 

 The trial judge instructed the jury, in pertinent part, as follows:
 

 This action has been brought as a part of a case known as the Engle class action. The first issue for your determination ... is whether Benny Martin was a member of the Engle class. Certain findings from that action are binding upon you, the Court and the parties.
 
 *1065
 
 The findings may not be denied or questioned, and they must carry the same weight they would have if you had determined them yourselves. The established findings are: Finding one, is that cigarettes are addictive. Finding two, is that cigarettes cause lung cancer.
 

 If you find that Benny Martin is a member of the Engle class, certain other findings are binding upon you, the Court and the parties. The findings may not be denied or questioned, and they must carry the same weight they would have if you had determined them yourselves. Those established findings are: Finding three, is that R.J. Reynolds Tobacco Company was negligent. Finding four, is that R.J. Reynolds Tobacco Company placed cigarettes on the market that were defective and unreasonably dangerous. Finding five, is that R.J. Reynolds Tobacco Company conspired with other companies to conceal or omit information regarding the health effect [sic] of cigarettes or their addictive nature or both. Those companies include Phillip Morris, Leggett, Lorillard, Brown <& Williamson Tobacco Corporation, individually, and as successors to the American Tobacco Company, the Council for Tobacco Research, USA, Inc., and the Tobacco Institute. Finding six, is that R.J. Reynolds Tobacco Company, in furtherance of that conspiracy, concealed or omitted material information, not otherwise known or available, knowing that material was false or misleading, or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both.
 

 * ⅜ *
 

 The findings that I have described to you do not establish that R.J. Reynolds Tobacco Company is liable to Mrs. Martin, nor do they establish whether Benny Martin was injured by R.J. Reynolds Tobacco Company’s conduct or the degree, if any, to which R.J. Reynolds Tobacco Company’s product was the sole or contributing cause of Benny Martin’s death. The findings establish only what they expressly state, and you must not speculate or guess as to the basis for the findings.
 

 [[Image here]]
 

 The first issue for your determination ... is whether Benny Martin was a member of the Engle class. In order to be a member of the Engle class, the plaintiff must prove that Benny Martin was addicted to R.J. Reynolds cigarettes containing nicotine, and, if so, that his addiction was the legal cause of his death.... Addiction is a legal cause of death if it directly and in a natural and continuous sequence produces or contributes substantially to producing such death ... so that it can reasonably be said that, but for the addiction to cigarettes containing nicotine, the death would not have occurred.
 

 [[Image here]]
 

 The next issue for your determination is whether the conspiracy to withhold health information or information regarding addiction and the acts proven in furtherance of that conspiracy were a legal cause of the death of Benny Martin. In order to be a legal cause of death, plaintiff must show that Benny Martin relied on statements by either R.J. Reynolds Tobacco Company or any of the other companies involved in the conspiracy that omitted material information concerning the health effect [sic] of cigarettes or their addictive nature or both made at any time during or after December 1953.... Benny Martin’s reliance on such statements to his detriment is a legal cause of loss if it directly and in natural and continuous sequence
 
 *1066
 
 produces or contributes substantially to such loss, so that it can reasonably be said that, but for Benny Martin’s reliance, the loss would not have occurred.
 

 * ⅜ *
 

 Punitive damages are warranted if you find by clear and convincing evidence that ... one, the conduct causing loss to the plaintiff was so gross and flagrant as to show a reckless disregard of human life or of the safety of persons exposed to the effects of such conduct; or, two, the conduct showed such an entire lack of care that the defendant must have been consciously indifferent to the consequences; or, three, the conduct showed such an entire lack of care that the defendant must have wantonly or recklessly disregarded the safety and welfare of the public; or, four, the conduct showed such reckless indifference to the rights of others as to be equivalent to an intentional violation of those rights.
 

 The jury found that addiction to RJR cigarettes was a legal cause of Mr. Martin’s death; RJR’s conspiracy to conceal and actual concealment of information was a legal cause of Mr. Martin’s death; RJR and Mr. Martin are respectively 66% and 34% responsible for Mr. Martin’s death; and punitive damages are warranted. The jury awarded Mrs. Martin $5 million in compensatory damages, which the court later reduced to $3.3 million based on the jury’s apportionment of fault, and $25 million in punitive damages. The trial court accordingly entered a Final Judgment for Mrs. Martin.
 

 II. ANALYSIS
 

 A. Application of Engle
 

 The crux of this appeal is the extent to which an
 
 Engle
 
 class member can rely upon the findings from the class action when she individually pursues one or more
 
 Engle
 
 defendants for damages. RJR contends the
 
 Engle
 
 Phase I jury findings in the class action establish nothing relevant to any individual class member’s action for damages, and thus the trial court applied
 
 Engle
 
 too broadly in Mrs Martin’s case. In RJR’s view, the findings given res judicata effect by the supreme court facially prove only that RJR at some point manufactured and sold an unspecified brand of cigarette containing an undefined defect; RJR committed one or more unspecified negligent acts; RJR on some occasion concealed unspecified information about the health effects of smoking and the addictive nature of smoking; and RJR and several other entities agreed to conceal said unspecified information. Thus, RJR argues, notwithstanding the
 
 Engle
 
 findings Mrs. Martin was required to prove Lucky Strike brand cigarettes contained a specific defect rendering the brand unreasonably dangerous; RJR violated a duty of care it owed to Mr. Martin; RJR concealed particular information which, had it been disclosed, would have led Mr. Martin to avoid contracting lung cancer; and RJR was part of a conspiracy to conceal the specified information.
 

 We disagree with RJR’s characterization of the
 
 Engle
 
 findings. RJR attempts to diminish the preclusive effect of the findings by claiming, based on the Phase I verdict form, that the findings “facially” prove nothing specifically relevant to Mr. Martin’s claims. In so doing, RJR urges an application of the supreme court’s decision that would essentially nullify it. We decline the invitation.
 
 See Hoffman v. Jones,
 
 280 So.2d 431, 434 (Fla.1973) (district courts of appeal do not have the prerogative to overrule Florida Supreme Court precedent).
 
 See also, Brown v. R.J. Reynolds Tobacco Co.,
 
 611 F.3d 1324, 1335, (11th Cir.2010) (“The Phase I ap
 
 *1067
 
 proved findings ... do establish some facts that are relevant to this litigation. Otherwise, the Florida Supreme Court’s statement in
 
 [Engle
 
 ] that the Phase I approved findings were to have ‘res judica-ta effect’ in trials involving former class members would be meaningless.”). No matter the wording of the findings on the Phase I verdict form, the jury considered and determined specific matters related to the defendants’ conduct. Because the findings are common to all class members, Mrs. Martin, under the supreme court’s holding in
 
 Engle,
 
 was entitled to rely on them in her damages action against RJR. The question is to what extent could Mrs. Martin use the
 
 Engle
 
 findings to establish the elements of her claims?
 

 In support of its argument, RJR points out the Eleventh Circuit’s decision in
 
 Brown v. R.J. Reynolds Tobacco Co., supra,
 
 an interlocutory appeal in an
 
 Engle
 
 progeny lawsuit pending in the United States District Court, Middle District of Florida. The plaintiff in
 
 Brown
 
 appealed a pretrial order ruling that “the
 
 Engle
 
 Phase I findings may not be used to establish any element of an individual
 
 Engle
 
 plaintiffs claim.”
 
 Brown v. R.J. Reynolds Tobacco Co.,
 
 576 F.Supp.2d 1328, 1347-48 (M.D.Fla.2008). The Eleventh Circuit vacated the order, reasoning that the Florida Supreme Court’s decision in
 
 Engle
 
 must be given the same preclusive effect in federal courts it would have in state courts.
 
 Brown,
 
 611 F.3d at 1331. The court then explained what it believes are the scope of the preclusive effect of
 
 Engle
 
 and the burden individual plaintiffs in federal court must carry in proving applicability of the
 
 Engle
 
 findings to their claims. It determined the supreme court, in giving the Phase I findings res judicata effect in subsequent lawsuits by
 
 Engle
 
 class members, necessarily meant issue preclusion rather than claim preclusion — both of which are included in the concept of “res judicata”— because “factual issues and not causes of action were decided in Phase I.”
 
 Id.
 
 at 1333. Then, relying on
 
 Gordon v. Gordon,
 
 59 So.2d 40 (Fla.1952), and
 
 Seaboard Coast Line R.R. Co. v. Industrial Contracting Co.,
 
 260 So.2d 860 (Fla. 4th DCA 1972), the court concluded individual
 
 Engle
 
 plaintiffs may only use the Phase I findings to establish elements of their claims in federal court if they can demonstrate with a “reasonable degree of certainty” which facts were “actually adjudicated.”
 
 Brown,
 
 611 F.3d at 1334-35. This they can do by pointing to relevant parts of the class action trial transcript.
 
 Id.
 
 at 1335.
 

 While we generally agree with the Eleventh Circuit’s analysis of issue preclusion versus claim preclusion, we find it unnecessary to distinguish between the two or to define what the supreme court meant by “res judicata” to conclude the factual determinations made by the Phase I jury cannot be relitigated by RJR and the other
 
 Engle
 
 defendants. More importantly, we do not agree every
 
 Engle
 
 plaintiff must trot out the class action trial transcript to prove applicability of the Phase I findings. Such a requirement undercuts the supreme court’s ruling. The Phase I jury determined
 
 “common issues
 
 relating exclusively to the defendants’ conduct ...” but not “whether any class members relied on Tobacco’s misrepresentations or were injured by Tobacco’s conduct.”
 
 Engle,
 
 945 So.2d at 1256 (emphasis added). The common issues, which the jury decided
 
 in favor of the class,
 
 were the “conduct” elements of the claims asserted by the class, and not simply, as characterized by the Eleventh Circuit, a collection of facts
 
 relevant
 
 to those elements.
 

 As pertinent to Mrs. Martin’s claims, the class plaintiffs, to prove strict product liability, had to “ ‘establish the manufacturer’s relationship to the product in question, the defect and unreasonably dangerous
 
 *1068
 
 condition of the product, and the existence of a proximate causal connection between such condition and the user’s injuries or damage.’ ”
 
 Siemens Energy & Automation, Inc. v. Medina,
 
 719 So.2d 312, 315 (Fla. 3d DCA 1998) (quoting
 
 West v. Caterpillar Tractor Co.,
 
 336 So.2d 80, 87 (Fla.1976)). To prevail on the fraud by concealment claim, the plaintiffs had to prove the tobacco companies concealed or failed to disclose a material fact; the companies knew or should have known the material fact should be disclosed; the companies knew them concealment of or failure to disclose the material fact would induce the plaintiffs to act; the tobacco companies had a duty to disclose the material fact; and the plaintiffs detrimentally relied on the misinformation.
 
 See Friedman v. Am. Guardian Warranty Servs., Inc.,
 
 837 So.2d 1165, 1166 (Fla. 4th DCA 2003);
 
 Gutter v. Wunker,
 
 631 So.2d 1117, 1118 (Fla. 4th DCA 1994).
 
 See generally
 
 21 Patrick John McGinley,
 
 Fla. Frac., Elements of an Action,
 
 § 17:1 (2009-2010 ed.). The civil conspiracy claim required proof that the class defendants agreed to do an unlawful act or to do a lawful act by unlawful means, an overt act was done to further the conspiracy, and the plaintiffs were damaged as a result of the conspiracy.
 
 See Charles v. Fla. Foreclosure Placement Ctr.,
 
 988 So.2d 1157, 1159-60 (Fla. 3d DCA 2008). And the four elements of the negligence claim were “[a] duty ... requiring the [class defendants] to conform to a certain standard of conduct, for the protection of others against unreasonable risks[;]” a breach of that duty by the defendants; a “causal connection between the [defendants’] conduct and the [plaintiffs’] resulting injury ... commonly known as ... ‘proximate cause[;]” and damage to the plaintiffs.
 
 Curd v. Mosaic Fertilizer, L.L.C.,
 
 39 So.3d 1216, 1227 (Fla.2010) (quoting
 
 Clay Elec. Coop., Inc. v. Johnson,
 
 873 So.2d 1182, 1185 (Fla.2003)).
 

 The Final Judgment and Amended Omnibus Order entered in the
 
 Engle
 
 class action sets out the evidentiary foundation for the Phase I jury’s findings on these claims, and demonstrates that the verdict is conclusive as to the conduct elements of the claims. The order reflects that Lucky Strike, the brand Mr. Martin primarily smoked, was one of the sixteen cigarette brands named by the class representatives and that the Phase I jury findings encompassed all the brands.
 
 Engle v. RJ Reynolds Tobacco Co.,
 
 No. 94-08273, 2000 WL 33534572, at *1 (Fla.Cir.Ct. Nov. 6, 2000). The evidence supporting the strict liability finding showed the tobacco companies’ cigarettes contain carcinogens, nitrosa-mines, and carbon dioxide, among other ingredients harmful to health which, when combined with the nicotine cigarettes also contain, make the product unreasonably dangerous.
 
 Id.
 
 at *2. The jury based its findings on the fraud by concealment and conspiracy claims on evidence showing RJR and its co-conspirators agreed to conceal their own scientific research results revealing that cigarettes cause cancer and other diseases and that the nicotine in tobacco is addictive. There also was evidence the defendants had taken on the duty to disclose by promising to share their research results with the public. The evidence further showed that not only did the defendants conceal information about the dangers of smoking they also enticed people to keep smoking by creating a controversy over whether smoking indeed had deleterious , health effects.
 
 Id.
 
 at *2-3. And on the negligence claim, the jury determined the defendants owed all class members a duty to prevent injury from cigarettes the defendants knew to be harmful, and they breached their duty by selling cigarettes dangerous to health without taking reasonable measures to prevent injury to smokers.
 
 Id.
 
 at *4.
 

 
 *1069
 
 As does the Eleventh Circuit, we interpret the supreme court’s ruling in
 
 Engle
 
 to mean individual class plaintiffs, when pursuing RJR and the other class defendants for damages, can rely on the Phase I jury’s factual findings. But unlike the Eleventh Circuit, we conclude the Phase I findings establish the conduct elements of the asserted claims, and individual
 
 Engle
 
 plaintiffs need not independently prove up those elements or demonstrate the relevance of the findings to their lawsuits, assuming they assert the same claims raised in the class action. For that reason, we find the trial court in Mrs. Martin’s case correctly construed
 
 Engle
 
 and instructed the jury accordingly on the pre-clusive effect of the Phase I findings.
 

 B. Evidence of Causation and Detrimental Reliance
 

 As a corollary to its argument on the preclusive effect of
 
 Engle,
 
 RJR asserts the trial court did not require Mrs. Martin to prove legal causation on her negligence and strict liability claims. On the contrary, the trial court instructed the jury that
 

 The first issue for your determination ... is whether Benny Martin was a member of the Engle class. In order to be a member of the Engle class, the plaintiff must prove that Benny Martin was addicted to R.J. Reynolds cigarettes containing nicotine, and, if so, that his addiction was the legal cause of his death.... Addiction is a legal cause of death if it directly and in a natural and continuous sequence produces or contributes substantially to producing such death ... so that it can reasonably be said that, but for the addiction to cigarettes containing nicotine, the death would not have occurred.
 

 RJR stipulated pretrial that nicotine in cigarettes is addictive and smoking cigarettes causes lung cancer. RJR further stipulated that Mr. Martin smoked Lucky Strike cigarettes, every Lucky Strike cigarette he smoked contained nicotine, and Mr. Martin did not smoke any brand of cigarettes other than Lucky Strike and Camel (another RJR brand). At trial Mrs. Martin produced evidence showing that: Mr. Martin started smoking at age 14 and by age 23 was smoking two packs of non-filtered Lucky Strike cigarettes every day; he tried unsuccessfully several times over the years to quit smoking and was distraught over it; Mr. Martin was diagnosed by a physician as being addicted to nicotine; his treating pulmonologist determined his decades of smoking caused him to contract lung cancer which in turn caused his death. The record thus demonstrates Mrs. Martin was required to prove legal causation, and she produced sufficient evidence for a jury to find that Mr. Martin’s addiction to RJR’s cigarettes was the legal cause of his death.
 

 RJR also argues that Mrs. Martin failed to prove the reliance element of her fraudulent concealment claim because she put on no direct evidence showing Mr. Martin relied on information put out by the tobacco companies omitting scientific findings on the harmful effects of smoking. But the record contains abundant evidence from which the jury could infer Mr. Martin’s reliance on pervasive misleading advertising campaigns for the Lucky Strike brand in particular and for cigarettes in general, and on the false controversy created by the tobacco industry during the years he smoked aimed at creating doubt among smokers that cigarettes were hazardous to health.
 
 Cf. Bullock v. Philip Morris USA, Inc.,
 
 159 Cal.App.4th 655, 71 Cal.Rptr.3d 775, 792 (2008) (plaintiff was not required to prove actual reliance on tobacco company’s specific misrepresentation where there was evidence that the company sustained a broad-based public
 
 *1070
 
 campaign for many years disseminating misleading information and creating a controversy over the adverse health effects of smoking intending that current and potential smokers would rely on the misinformation);
 
 Burton v. R.J. Reynolds Tobacco Co.,
 
 208 F.Supp.2d 1187, 1203 (D.Kan.2002) (jury could infer plaintiffs reliance where evidence showed RJR and co-conspirators “represented to the public that they would take it upon themselves to investigate and determine whether there were health consequences of smoking,” but despite evidence of cigarettes’ harmful effects RJR “engaged in a publicity campaign telling the public that whether there were negative health consequences from smoking remains an 'open question.’ ”).
 

 C. Punitive Damages
 

 Finally, RJR challenges the $25 million punitive damage award arguing it is improperly based on the
 
 Engle
 
 findings and excessive in light of the $3.3 million in compensatory damages awarded Mrs. Martin. Section 768.72(2), Florida Statutes, requires a plaintiff seeking punitive damages to prove by clear and convincing evidence the defendant is guilty of intentional misconduct or gross negligence.
 
 See Wayne Frier Home Ctr. of Pensacola, Inc. v. Cadlerock Joint Venture, L.P.,
 
 16 So.3d 1006, 1008 (Fla. 1st DCA 2009). The evidence Mrs. Martin produced in support of her claim included, among other things, a 1972 internal RJR document stating, “In a sense, the tobacco industry may be thought of as being a specialized, highly ritualized and stylized segment of the pharmaceutical industry. Tobacco products uniquely contain and deliver nicotine, a potent drug, with a variety of physiological effects.” The same document describes nicotine as a “known ... habit forming alkaloid” and notes the “confirmed” tobacco user “primarily seek[s] physiological satisfaction derived from nicotine and perhaps other active compounds. His choice of product and pattern of usage are primarily determined by his individual nicotine dosage requirements.... ” At the time, the evidence showed, RJR was publicly denying nicotine is a drug, and tobacco companies including RJR were not only actively concealing their own research results revealing the harmful health effects of smoking cigarettes, but also purposefully misleading the public to believe the issue was unresolved. The evidence also showed that as early as 1935 it was technically possible to remove nicotine from Lucky Strike cigarettes but the company
 
 [3]
 
 chose not to do so because it would result in an “emasculated cigarette, shorn of those very qualities which give a cigarette character and appeal.” That business decision endured, as industry documents revealed RJR in 1993 remained concerned that if it were to remove nicotine from its cigarettes people would elect not to smoke. We are satisfied Mrs. Martin produced sufficient evidence independent of the
 
 En-gle
 
 findings to allow the jury to find RJR guilty of intentional misconduct or gross negligence.
 

 Nevertheless, the $25 million award is presumed excessive under Florida law. Section 768.73, Florida Statutes (2005) provides, in pertinent part:
 

 (l)(a) In any civil action based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty, and involving willful, wanton, or gross misconduct, the judgment for the total amount of punitive damages award
 
 *1071
 
 ed to a claimant may not exceed three times the amount of compensatory damages awarded to each person entitled thereto by the trier of fact, except as provided in paragraph (b). However this subsection does not apply to any class action.
 

 (b) If any award for punitive damages exceeds the limitation specified in paragraph (a), the award is presumed to be excessive and the defendant is entitled to remittitur of the amount in excess of the limitation unless the claimant demonstrates to the court by clear and convincing evidence that the award is not excessive in light of the facts and circumstances which were presented to the trier of fact.
 

 The punitive-to-compensatory ratio here is 7.58 to 1. Yet the trial court denied RJR’s motion for remittitur because, “[considering the cause of action leading to the award of punitive damages, the Florida statutory cap of 3 to 1 is inapplicable.” The court further concluded “[t]he award of punitive damages in this cause is not so excessive as to violate concepts of due process.” We review the trial court’s denial of remittitur for abuse of discretion but consider
 
 de novo
 
 whether the award is within the boundaries of due process.
 
 See Engle,
 
 945 So.2d at 1263.
 

 Turning first to whether remittitur was appropriately denied under section 768.73, the facts and circumstances in this case are significantly similar to those in
 
 Owens-Corning Fiberglas Corp. v. Ballard,
 
 749 So.2d 483 (Fla.1999), in which the supreme court upheld a punitive damages award that was nearly 18 times the compensatory damages award. There the plaintiff brought a products liability action against Owens-Corning alleging he contracted mesothelioma after 30 years of exposure to Kaylo brand asbestos-laden insulation the company manufactured and sold. The jury awarded $1.8 million in compensatory damages and $31 million in punitive damages.
 
 Id.
 
 at 484-85. The evidence in the case showed that for 30 years Owens-Corning knew about the dangers of asbestos and not only concealed the information, but also intentionally misrepresented the safety of Kaylo, advertising it as “non-toxic.”
 
 Id.
 
 at 487. Further, the company refused — because it would not be profitable — to correct the defect either by removing asbestos from Kaylo or by marketing an asbestos-free substitute it had developed, and refused to warn the public of the cancer risk from exposure to asbestos. Finding the evidence sufficient to support a finding of “flagrant disregard” and “apparent indifference” to the safety of those who were exposed to Kaylo, the supreme court concluded the trial court “acted properly and responsibly under section 768.73(1) in determining that the punitive damages award ... fell within the exception to the statutory cap.”
 
 Id.
 
 at 488-89. The evidence in the instant case demonstrates with similar import RJR’s disregard for the safety of Benny Martin and other smokers of its cigarette brands: decades-long purposeful concealment of the health risks from smoking cigarettes, refusal to take nicotine out of Lucky Strike because sales would decrease, and collusion with other tobacco industry entities to affirmatively mislead the public into thinking cigarettes indeed may not be harmful. We find no abuse of discretion in the trial court’s approval, under section 768.73(l)(b), of the $25 million punitive damages award.
 

 The second question to be answered is whether the award violates constitutional due process principles.
 

 Despite the broad discretion that States possess with respect to the imposition of criminal penalties and punitive damages,
 
 *1072
 
 the Due Process Clause of the Fourteenth Amendment to the Federal Constitution imposes substantive limits on that discretion. That Clause makes the Eighth Amendment’s prohibition against excessive fines and cruel and unusual punishments applicable to the States. The Due Process Clause of its own force also prohibits the States from imposing “grossly excessive” punishments on tort-feasors.
 

 Cooper Indus., Inc. v. Leatherman Tool Group,
 
 532 U.S. 424, 433-34, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (citations omitted). The three criteria a punitive damages award must satisfy under Florida law to pass constitutional muster are: (1) “the manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage, or wantonness of the tortious conduct;” (2) the award “bears some relationship to the defendant’s ability to pay and does not result in economic castigation or bankruptcy to the defendant;” and (3) a reasonable relationship exists between the compensatory and punitive amounts awarded.
 
 Engle,
 
 945 So.2d at 1263-64.
 

 We find the $25 million award here is not out of proportion with what the jury clearly considered to be wanton conduct by RJR in marketing a product it knew to be harmful and misleading the public about the health risks of smoking cigarettes. Neither does the award place RJR in a precarious financial position as the evidence showed that between 2005 and 2008 it had shareholder equity of approximately $8 billion and net annual earnings of $1 billion. We recognize, as RJR points out, there are thousands of
 
 Engle
 
 progeny cases pending in the trial courts and the company’s potential financial exposure is significant. But our review is limited to the facts and circumstances of
 
 this
 
 case, and we decline to disturb an otherwise reasonable punitive damages award to mitigate RJR’s future liability. Finally, the 7.58 to 1 ratio of punitive to compensatory damages does not, under the circumstances of this case, offend due process. Neither the United States Supreme Court nor the Florida Supreme Court has adopted a bright-line limit to which punitive damages awards must adhere. RJR asserts the Supreme Court did just that and adopted a 1 to 1 ratio in
 
 Exxon Shipping Co. v. Baker,
 
 554 U.S. 471, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008). But the Court’s review of the punitive damages award in
 
 Exxon Shipping
 
 did not invoke due process principles. Rather, the “en-quiry differ[ed] from due process review because the case [arose] under federal maritime jurisdiction,” and the Court “ex-amin[ed] the verdict in the exercise of federal maritime common law authority, which precedes and should obviate any application of the constitutional standard.”
 
 Id.
 
 at 2626. There remain “no rigid benchmarks that a punitive damages award may not surpass,” but “[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State’s goals of deterrence and retribution, than awards with” higher ratios.
 
 State Farm Mut. Auto. Ins. Co. v. Campbell,
 
 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). We find no justification in the record to undo the jury’s decision to award Mrs. Martin $25 million in punitive damages.
 

 III. CONCLUSION
 

 In summary, the Phase I jury findings given preclusive effect in
 
 Engle
 
 established the conduct elements of Mrs. Martin’s strict liability, fraudulent concealment, civil conspiracy and negligence claims against RJR. The trial court therefore correctly applied
 
 Engle.
 
 Mrs. Martin produced sufficient independent evidence to prove cau
 
 *1073
 
 sation, detrimental reliance, and entitlement to punitive damages. The punitive damage award overcomes the presumption of excessiveness in section 768.73, Florida Statutes (2005), and satisfies due process in view of the evidence of decades-long wanton conduct by RJR and because the award does not financially devastate the company. Accordingly, we AFFIRM the Final Judgment in all respects.
 

 CLARK and WETHERELL, JJ., concur.
 

 *
 

 Judge Bradford L. Thomas heard oral argument in this case. After Judge Thomas re-cused himself, Judge T. Kent Wetherell, II, was assigned to the panel to replace Judge Thomas. Judge Wetherell has considered the record and briefs submitted in this case and the video recording of the oral argument held July 20, 2010.
 

 [1]
 

 . Mr. Martin primarily smoked Lucky Strike, but he also smoked Camel, another RJR brand.
 

 [2]
 

 . Also named as defendants were Philip Morris USA, Inc.; Lorillard Tobacco Company; Lorillard, Inc.; Liggett Group, LLC; and Vector Group Ltd., Inc. By joint stipulation early in the litigation, they all were dismissed from the lawsuit with prejudice.
 

 [3]
 

 . American Tobacco Company, to which RJR is successor in interest, made and sold Lucky strike at that time.