MAY, C.J.,
specially concurring.
I concur in the majority opinion, but write to express my concern about the questions left unanswered in Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006), that are causing confusion in the trial courts. Our supreme court made clear that the Engle jury’s factual findings are binding on future litigation. Id. at 1269. Trial courts, and indeed appellate courts, struggle with the extent to which these findings resolve ultimate issues in the trial of individual claims. At least two courts have reached completely different conclusions on the preclusive effect of those findings. See R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060 (Fla. 1st DCA 2010); Brown v. R.J. Reynolds Tobacco Co., 576 F.Supp.2d 1328 (M.D.Fla.2008), vacated, 611 F.3d 1324 (11th Cir.2010).
In Martin, the First District Court of Appeal held the trial court had properly applied the supreme court’s decision in Engle. The “preclusive effect in Engle established the conduct elements of [the plaintiffs] strict liability, fraudulent con *719 cealment, civil conspiracy and negligence claims against [the defendant].” Martin, 53 So.3d at 1072. The court further held that the plaintiff had “produced sufficient independent evidence to prove causation, detrimental reliance, and entitlement to punitive damages.” Id. at 1072-73.
The Middle District reached a contrary conclusion in Brown. It found that allowing the Engle Phase I approved findings to establish elements of the plaintiffs’ causes of action would violate the defendants’ due process rights. 576 F.Supp.2d at 1344-46. Admittedly, Brown reviewed the preclu-sive effect of the Engle factual findings in a different procedural setting. There, the district court entered a pre-trial order that required the plaintiff to prove its entire case from scratch. Id. at 1348.
When the Eleventh Circuit reviewed the district court order in Brown, it found the court had reached its conclusion “without first giving preclusive effect to the Phase I approved findings.” Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1335 (11th Cir.2010). The Eleventh Circuit also found it “premature to address whether [the Engle ] findings by themselves establish any elements of the plaintiffs’ claims.” Id. at 1336. It then remanded the case for further consideration. Id.
These decisions call attention to the unsettled questions remaining since the supreme court’s decision in Engle. In fact, Justice Wells’ dissent in Engle foretold of the very concerns now being played out in the trial courts.
In what I conclude will be harmful and confusing precedent, the majority saves some of the jury findings in Phase I of the class action before decertifying the class. I do not join in doing that; rather, I would follow the overwhelming majority of courts and hold that this was not a proper class action. The result of the majority “retaining the jury’s Phase I findings” is not, as the majority asserts, “pragmatic,” majority op. at 1269; rather, it is problematic. Under the majority’s holding, the class closed a decade ago. Who are the individuals that are to get the use of these “findings”? How will a trial court make that determination? Does the individual only have to have an injury manifest prior to November 21,1996, or does the individual have to have notice of the class action? Does the majority’s holding mean that the statute of limitation has not run on any Florida resident’s claim whose injury manifested prior to November 21, 1996? How long do individuals have to file such individual actions? How are these findings to be used in cases in which the findings are used? I assume that any individual cases filed on claims in which injuries manifested on November 22, 1996, or later do not get the benefit of these findings, so that there will be two classes of claimants. These are only a few of the issues which arise in application of the majority’s holding.
Engle, 945 So.2d at 1284.
Indeed, the Eleventh Circuit expressed a similar concern.
For example, Question 3 on the verdict form asked the jury: “Did one or more of the Defendant Tobacco Companies place cigarettes on the market that were defective and unreasonably dangerous?” The jury answered “yes,” for every time period for every defendant except Brooke Group, Ltd., Inc. Under the defendants’ view, the only fact that the jury found was that they sold some cigarette that was defective and unreasonably dangerous during the time periods listed on the verdict form. That would mean that the finding may not establish anything more specific; it may not establish, for instance, that any particular type or brand of cigarette sold by a *720 defendant during the relevant time period was defective and unreasonably dangerous. Under the plaintiffs’ broader view the jury’s finding must mean that all cigarettes the defendants sold were defective and unreasonably dangerous because there is nothing to suggest that any type or brand of cigarette is any safer or less dangerous than any other type or brand. One problem with that argument is that the plaintiffs have pointed to nothing in the record, and there is certainly nothing in the jury findings themselves, to support their factual assertion. Under Florida law the issue preclusion standard requires the asserting party to show with a “reasonable degree of certainty” that the specific factual issue was determined in its favor.
611 F.3d at 1335 (footnotes and citation omitted).[8]
What the trial courts are playing is a form of legal poker. They must use the legal cards they have been dealt — the En-gle factual findings are binding. But, as R.J. Reynolds argues, a number of ultimate factual issues remain unresolved as identified by the dissent in Engle and the Eleventh Circuit in Brown.
And, a lurking constitutional issue hovers over the poker game: To what extent does the preclusive effect of the Engle findings violate the manufacturer’s due process rights?
Until our supreme court answers these and other questions, parties to the tobacco litigation will continue to play legal poker, placing their bets on questions left unresolved by Engle and calling the bluff of trial courts on a myriad of issues sure to rise from the hundreds, no thousands, of cases pending in trial courts throughout our State.

. The federal district court noted that the Engle findings failed to determine exactly what the defendants did wrong and when for the negligence claim, and what defect rendered the product defective for the strict liability claim. Brown v. R.J. Reynolds Tobacco Co., 576 F.Supp.2d 1328, 1342-44 (M.D.Fla.2008).