IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

R. J. REYNOLDS TOBACCO
COMPANY,

    Appellant,

v.

COLETTE S. O'HARA, as
Personal Representative for the
Estate of GARRY L. O'HARA,

    Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-5764

_____/

Opinion filed October 11, 2017.

An appeal from the Circuit Court for Escambia County.
Michael Jones, Judge.

Charles F. Beall, Jr. and Larry Hill of Moore, Hill & Westmoreland, P.A., Pensacola, Florida, and Michael A. Carvin of Jones Day, Washington, D.C., for Appellant.

John S. Mills of The Mills Firm, P.A., Tallahassee, Florida, and Mark A. Avera of Avera & Smith, Gainesville, Florida, for Appellee.

MAKAR, J.

In this tobacco case, jurors returned an almost $15 million verdict for compensatory damages against R. J. Reynolds ("RJR"), followed thereafter by a $20 million award for punitive damages. RJR raises a number of issues, all of which we

affirm without discussion, except its claim regarding a special jury instruction requested by counsel for Colette S. O'Hara, the wife of decedent, Gary O'Hara.

Mrs. O'Hara sued RJR, asserting four claims arising from her husband's death: wrongful death, strict liability, fraudulent concealment, and conspiracy to fraudulently conceal. At trial, her counsel requested a special jury instruction related to her claim for fraudulent concealment, advancing the argument that the instruction was appropriate in light of this Court's decision in R.J. Reynolds Tobacco Co. v. Martin, 53 So. 3d 1060 (Fla. 1st DCA 2010). The proposed instruction read:

> Plaintiff need not provide direct evidence of Mr. O'Hara's reliance on any specific statement by Reynolds or its co-conspirators. You may instead infer Mr. O'Hara's reliance on such statements if the evidence as a whole supports such an inference. You may decline to infer such reliance.

In the circuit court, and now on appeal, O'Hara urged that the sole basis for this specific instruction was that it was necessary to prevent RJR's trial counsel from inaccurately arguing the meaning of Martin during closing arguments. O'Hara's counsel argued at trial as follows:

> And I think that this instruction is probably an instruction that need not be given but for an argument that we expect them to make in their closing, and that argument is, if they were to argue to the jury that there is no reliance here because no statement—there's no evidence that he heard any statement, that would be suggesting to the jury something that the law is the opposite of. And so if they will agree to not make that argument, we don't need the instruction.

2

O'Hara's apparent concern was that RJR would be pointing the jury to a lack of direct evidence that Mr. O'Hara relied on tobacco advertisements, which could mislead the jury into believing it could not infer reliance based on other evidence, such as extensive industry advertising.

RJR countered that the instruction was improper because it was "basically a comment on the sufficiency of the evidence" that was highly prejudicial given the dearth of evidence showing "any reliance or [an] inference of reliance at all." It pointed out that the standard instruction on inferences ("You may draw reasonable inferences from the evidence") was adequate, saying that the proposed instruction established a lesser burden that was improper. RJR noted that the proposed instruction was "not given anywhere else in the state," which appears to be the case. It also urged that Martin was not a jury instruction case, but an evidentiary sufficiency case that concerned only whether the plaintiff in that case presented enough evidence to justify upholding the verdict on appeal.

The trial judge, signaling some discomfort because no appellate opinion had yet addressed such an instruction since Martin was decided in 2010, said he was "willing to give it if the Plaintiff asks for it" but noted that "sometimes prudence is—you know, restraint is a better course." As such, he said the "question becomes, is it worth spinning the wheel on an issue that may be reversible error for this language?" He left it to O'Hara's counsel to "tell me whether or not you want to tie

3

the knot in the noose" by giving the instruction; O'Hara asked that it be given, and it eventually was. Counsel for O'Hara offered to remove the instruction if RJR would agree to limit its arguments, but it declined. The standard instruction on inferences was given as was the "Martin" instruction, as the parties have dubbed it.

Turning to whether the trial court erred in giving the Martin instruction, the only reason supporting its use was to prevent RJR from making closing arguments that O'Hara's counsel felt would be legally improper. But, as a general matter, jury instructions are not designed to be used as pre-emptive shields to stave off a party's ability to argue its case; rather, a system of objections and trial court rulings serves to constrain closing arguments during which each side has a degree of latitude to advocate how the jury should construe the evidence. RJR was entitled to argue that no direct evidence of reliance existed and that no evidence existed by which an inference can be drawn as to O'Hara's reliance on tobacco advertising; that is an entirely appropriate strategy given O'Hara's obliviousness as to the industry's misleading advertising (he only cared that he had cigarettes and his wife simply bought the cheapest ones). An instruction, designed solely to prevent RJR from arguing what it believed the evidence showed, was improper.

Buttressing this conclusion is if the trial court refused to give the instruction, that exercise of discretion would be supportable under the applicable test as recently stated in R.J. Reynolds Tobacco Co. v. Jewett, 106 So. 3d 465, 467 (Fla. 1st DCA

4

2012):

> A trial court abuses its discretion when it fails to give a proposed instruction that is (1) an accurate statement of the law, (2) supported by the facts of the case, and (3) necessary for the jury to properly resolve the issues, so long as the subject of the proposed instruction is not covered in other instructions given to the jury and the failure to instruct is shown to be prejudicial.

Putting aside whether the Martin instruction was accurate legally and supportable factually, it was unnecessary for the jury to "properly resolve the issues" related to reliance. That the proposed instruction was consistent with the principles upon which Martin was decided does not mandate a separate instruction on inferences, particularly when the standard instruction was given much like in Martin.[1] The standard instruction was all that was necessary to give both sides the freedom to argue their perspectives on whether an inference should be drawn from the evidence. If RJR argued that neither direct nor circumstantial evidence supported reliance,

---

[1] The standard instruction used in Martin stated, "In determining the facts, you may draw reasonable inferences from the evidence. You may make deductions and reach conclusions which reason and common sense lead you to draw from the facts shown by the evidence in this case, but you should not speculate on any matters outside the evidence." Fla. Std. Jury Instr. (Civ.) 2.1 (adopted in In re Standard Jury Instructions Civil Cases, 515 So. 2d 737, 737 (Fla. 1987)). That standard instruction has been replaced by another, 601.1, entitled "Weighing the Evidence," which states in relevant part: "Your job is to determine what the facts are. You may use reason and common sense to reach conclusions. You may draw reasonable inferences from the evidence. But you should not guess about things that were not covered here. And, you must always apply the law as I have explained it to you." Fla. St. Jury Instr. (Civ.) 601.1 (2017) (adopted in In re Standard Jury Instructions In Civil Cases-Report No. 09-01 (Reorganization of the Civil Jury Instructions), 35 So. 3d 666 (Fla. 2010)).

O'Hara's counsel was free to undermine and discredit such an argument by pointing to the standard instruction that says the jury may "draw reasonable inferences from the evidence" and that a reasonable inference is that O'Hara knew of the pervasive advertising by the tobacco industry. A special Martin instruction was unnecessary; at most, if RJR argued that direct evidence was necessary by law to establish reliance, O'Hara's counsel was free to object and obtain a ruling to the contrary. In addition, the proposed Martin instruction was potentially confusing because its wording differed from the standard instruction, the latter stating that "reasonable inferences" could be drawn from the evidence while the former mentions nothing about "reasonableness" and, instead, states that the "evidence as a whole" must support an inference. These are not substantial differences, but dissimilar enough to create confusion.

Notably, Martin didn't involve a jury instruction issue; instead, it focused solely on the appellate question of whether the jury in that case could have inferred that Martin relied on the "pervasive misleading advertising campaigns for the Lucky Strike brand in particular and for cigarettes in general, and on the false controversy created by the tobacco industry during the years he smoked aimed at creating doubt among smokers that cigarettes were hazardous to health." Martin, 53 So. 3d at 1069. Martin was a sufficiency of the evidence case that—on its face—did not purport to break new legal ground, though it has been interpreted differently,

distinguished, and rejected by some courts.[2] See id. All the appellate court in Martin did was determine whether sufficient evidence existed to support the inference that Martin likely relied on the "pervasive misleading" ad campaign. Id. at 1066-72. And it involved facts unlike this case, one in which O'Hara—unlike Martin—was aloof if not disengaged from the branding and marketing efforts of the tobacco industry. As such, Martin is not a good candidate to support a new jury instruction.

Concerning the potential prejudicial effect against the company, Reynolds states that the Martin instruction left a "misleading impression [that] was particularly harmful given the powerful evidence that Mr. O'Hara did not rely on any statement from the tobacco industry." We do not disagree that the instruction may have unduly swayed some jurors in favor of O'Hara. But we cannot determine from the record whether this effect on the jury was the cause of prejudice to RJR. The reason is the unique two-path causation instruction used in this case, but not used in other

---

[2] See, e.g., Graham v. R.J. Reynolds Tobacco Co., 857 F.3d 1169, 1178-79 (11th Cir. 2017) (majority noting that Florida district courts of appeal "disagreed about how the smokers would prove causation in individual cases") (citing Florida appellate cases); Waggoner v. R.J. Reynolds Tobacco Co., 835 F. Supp. 2d 1244, 1278-79 (M.D. Fla. 2011) (departing from Martin due to its lack of "specific instructions on legal causation on the negligence and strict liability claims" in that case); Berger v. Philip Morris USA, Inc., 101 F. Supp. 3d 1228, 1239 (M.D. Fla. 2015) (concluding that "Martin does not properly state the appropriate standard as to the proof of [plaintiff's] alleged detrimental reliance"); R.J. Reynolds Tobacco Co. v. Brown, 70 So. 3d 707, 716 (Fla. 4th DCA 2011) (noting "[n]owhere does [Martin] require a finding of legal causation on negligence or strict liability independently").

jurisdictions, such as Duval County, which states:

> In order to be a legal cause of cancer, Plaintiff must show that Mr. O'Hara reasonably relied to his detriment on statements by Reynolds, which statements omitted material information concerning the health effects of cigarettes, or their addictive nature, or both, **or** that the omission or concealment of that information was a legal cause of his cancer.

(Emphasis added). The highlighted disjunctive "or" shows that jurors in this case could find legal cause by either O'Hara's reliance on RJR's statements *or* the "omission or concealment of that information" from O'Hara. In contrast, the latter part of the instruction on omission/concealment is not given in some jurisdictions, such as Duval County.

Although the jury here may have found causation under either a reliance theory or an omission/concealment theory (or both), the <u>Martin</u> instruction only impacted the reliance theory. For all we know, the jury may have found legal causation solely on a theory of omission/concealment, such that the reliance-based <u>Martin</u> instruction played no role in its decision-making. Had the Duval County instruction been used (or a special verdict form on causation), we would have clarity as to whether the proposed instruction directly impacted the jury's decision. Because it is indeterminate whether the proposed instruction affected the jury's verdict, affirmance is in order. <u>Golian v. Wollschlager</u>, 893 So. 2d 666, 667 (Fla. 1st DCA 2005) (stating that jury instruction decisions "will not be disturbed on appeal absent a clear demonstration that prejudicial error occurred"). Unlike

8

in <u>Gencorp, Inc. v. Wolfe</u>, 481 So. 2d 109, 112 (Fla. 1st DCA 1985), where the jury instruction was akin to a directed verdict for the plaintiff, we cannot conclude such is the case here.

AFFIRMED.

ROBERTS and JAY, JJ., CONCUR.