DAMOORGIAN, J.
This case is the first of the post-Engle cases to reach this court following the Florida Supreme Court’s decision in Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006) (hereinafter “Engle III ”).[1] The primary issue on appeal is how the Engle jury findings should be applied in individual cases.

Historical Background of Engle

Engle began as a nationwide smokers’ class action lawsuit filed in 1994 against cigarette companies and tobacco industry organizations for injuries allegedly caused by smoking.[2] Liggett Group Inc. v. Engle, 853 So.2d 434, 440-41 (Fla. 3d DCA 2003) (hereinafter “Engle II”). The class encompassed “‘[a]ll United States citizens and residents, and their survivors, who have suffered, presently suffer or have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine.’” Id. at 441. In 1996, the Third District affirmed the trial court’s certification of the class, but reduced the class to include Florida smokers only. R.J. Reynolds Tobacco Co. v. Engle, 672 So.2d 39, 42 (Fla. 3d DCA 1996) (hereinafter “Engle I ”).
In February 1998, the trial court issued a trial plan dividing the proceedings into three phases. Phase I consisted of a yearlong trial to consider the issues of liability and entitlement to punitive damages for the class as a whole. Engle III, 945 So.2d at 1256. The jury considered “common issues relating exclusively to the defendants’ conduct and the general health effects of smoking.” Id. The verdict form in Phase I asked the jury to answer “yes” or “no” to a series of questions for specific time periods for each of the defendants. At the conclusion of Phase I, the jury rendered a verdict against the tobacco defendants (hereinafter “Tobacco”) on almost every count. Id. at 1256-57.[3]

*710
Engle Jury Findings

The Phase I jury made the following findings (hereinafter “Engle findings”), which the Florida Supreme Court approved: [4]
1 [generic causation] (that smoking cigarettes causes aortic aneurysm, bladder cancer, cerebrovascular disease, cervical cancer, chronic obstructive pulmonary disease, coronary heart disease, esophageal cancer, kidney cancer, laryngeal cancer, lung cancer (specifically, adenocarinoma, large cell carcinoma, small cell carcinoma, and squamous cell carcinoma), complications of pregnancy, oral cavity/tongue cancer, pancreatic cancer, peripheral vascular disease, pharyngeal cancer, and stomach cancer), 2 [addiction/dependence] (that nicotine in cigarettes is addictive), 3 [strict liability] (that [Tobacco] placed cigarettes on the market that were defective and unreasonably dangerous), 4(a) [fraud by concealment] (that [Tobacco] concealed or omitted material information not otherwise known or available knowing the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both), 5(a) [civil conspiracy-concealment] (that [Tobacco] agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment), 6 [breach of implied warranty] (that [Tobacco] sold or supplied cigarettes that were defective), 7 [breach of express warranty] (that [Tobacco] sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by [Tobacco] ), and 8 [negligence] (that [Tobacco was] negligent).
Id. at 1276-77.
“In Phase I, the jury decided issues related to Tobacco’s conduct but did not consider whether any class members relied on Tobacco’s misrepresentations or were injured by Tobacco’s conduct.” Id. at 1263. “The questions related to some, but not all of the elements of each legal theory alleged.” Engle II, 853 So.2d at 450. Critical elements of liability, such as reliance and legal causation, were not determined by the Phase I jury. Id. Accordingly, the Phase I jury did not determine Tobacco’s ultimate liability to any individual class member. Id.; Engle III, 945 So.2d at 1263.
In Phase II, the same jury determined that Tobacco’s conduct was the legal cause of three individual class representatives’ injuries, awarding $12.7 million in compensatory damages offset by their comparative fault. Engle II, 853 So.2d at 441. Thereafter, the jury determined the lump-sum amount of punitive damages for the entire class to be $145 billion, without allocating that amount to any class member. Id.
*711 In Phase III, new juries were to decide the individual liability and compensatory damages for each of the estimated 700,000 class members. Id. at 442.
Before Phase III proceedings began, Tobacco appealed the verdicts. Id. In En-gle II, the Third District reversed the final judgment with instructions that the class be decertified. Id. at 440. The court concluded that class action treatment was inappropriate because “the plaintiffs smokers’ claims [we]re uniquely individualized and [could not] satisfy the ‘predominance’ and ‘superiority1 requirements imposed by Florida’s class action rules.” Id. at 444 (footnote omitted). The class appealed the Engle II decision to the Florida Supreme Court. See Engle III, 945 So.2d at 1254.
In Engle III, the Florida Supreme Court made several rulings relevant to the instant case. First, the court decertified the class prospectively, finding class treatment no longer viable for Phase III “because individualized issues such as legal causation, comparative fault, and damages predominate,” and allowed class members to file individual lawsuits within one year of the court’s mandate. Id. at 1268, 1277. Second, the court retained the Phase I jury findings and gave these “common core findings ... res judicata effect” in any subsequent individual action by class members. Id. at 1269. It is these findings and their application to the instant case we now address.

The Present Case

The decedent, Roger Brown was a long time smoker of Camel, Pall Mall, and Winston cigarettes[5] who developed lung and esophageal cancer. Mr. Brown’s death certificate listed esophageal cancer as the cause of death. Camel and Winston cigarettes were brands manufactured and sold by R.J. Reynolds (hereinafter “RJR”); Pall Malls were manufactured by Brown and Williamson, which was later purchased by RJR. Mr. Brown’s widow sued RJR as an Engle class member seeking damages for her husband’s death. She filed a complaint against RJR for strict liability, negligence, fraud by concealment, and civil conspiracy-fraud by concealment. At issue in this appeal is the viability of Mrs. Brown’s negligence and strict liability claims.[6]
The case proceeded to trial in two phases. In the first phase, the jury was asked to decide whether Mr. Brown was a member of the Engle class, ie. whether he was addicted to RJR cigarettes containing nicotine; and, if so, was his addiction a legal cause of his death. Mrs. Brown presented evidence from two experts, Dr. Neil Be-nowitz and Dr. Michael Cummings, who testified generally about smoking and nicotine addiction.
In particular, Dr. Benowitz testified concerning the medical standards for diagnosing addiction. He testified regarding the Fagerstrom Test for Nicotine Dependence, which consists of several questions and is the most commonly used test to assess nicotine addiction. The test examines (i) how soon an individual smokes the first cigarette upon waking up; (ii) whether it is difficult to smoke when the person is not *712 supposed to; (iii) how many cigarettes are smoked per day; and (iv) the loss of control of drug use.
He also testified about certain predictors of addiction. The shorter the time interval before a person smokes upon waking up, especially if first thing in the morning, the more highly addicted the person. An individual who smokes ten or more cigarettes per day, and never attempts to quit smoking, does not need to attempt to quit to be considered addicted to nicotine because a vast majority of individuals are, in fact, addicted. Another strong indicator of addiction is if a person continues to smoke after being diagnosed with a disease caused by smoking. On cross-examination, Dr. Benowitz admitted that he had no personal knowledge about the facts or Mr. Brown in the instant case.
Following his testimony, Mrs. Brown and her daughter testified about Mr. Brown’s smoking history. Mr. Brown had been smoking since he was twelve years old. At some point, Mr. Brown switched from smoking Camels to smoking Pall Malls, Marlboros and Winstons. He smoked a cigarette first thing in the morning, and smoked about three cigarettes before brushing his teeth. He smoked a pack and a half of cigarettes per day from the time he met his wife at age twenty-two until he died. He smoked at all hours of the day and night. He had attempted to quit, but simply could not stop. When he was diagnosed with cancer, he did not stop smoking even though the doctors told him that smoking caused his cancer. Both Mrs. Brown and her daughter testified that Mr. Brown was addicted to cigarettes.
Dr. Cummings testified next, essentially corroborating the testimony of Dr. Benow-itz with respect to the behavioral indicia of addiction. He explained that if the smoker was unavailable, he relied on information from people who knew the smoker to determine if the smoker was addicted.
Finally, Dr. Vinod Patel testified that there was a high probability that Mr. Brown’s cancer was related to smoking. He based this conclusion solely on a review of Mr. Brown’s medical records.
At the end of the first phase, the trial judge instructed the jury, in part, as follows:
I now instruct you that the following facts are not in dispute. One, nicotine in cigarettes is addictive. Two, Reynolds cigarettes contain nicotine. Three, Camel, Pall Mall and Winston brand cigarettes are Reynolds cigarettes. Four, smoking cigarettes causes lung cancer. Five, smoking cigarettes causes esophageal cancer.
[[Image here]]
Addiction is a legal cause of loss if it directly in a natural and continuous sequence produces or contributes substantially to producing such loss, so that it can reasonably be said that but for the addiction, the loss would not have occurred.
[[Image here]]
Now, with regard to the issue of legal cause, in order to be regarded as a legal cause of loss, addiction need not be the only cause. Addiction may be a legal cause of loss, even though it operates in combination with some other cause if the other cause occurs at the same time as the addiction and if the addiction contributes substantially to producing such loss.
[[Image here]]
I will now read that verdict form to you. It reads: Verdict, one question, was Roger Brown addicted to Reynolds cigarettes containing nicotine and if so was *713 such addiction a legal cause of Mr. Brown’s death? Answer yes or no.
The jury found that Mr. Brown was a member of the Engle class, and that his addiction to RJR cigarettes containing nicotine was a legal cause of his death in the first phase.
In the second phase, the jury was to determine (i) whether RJR’s conduct was a legal cause of Mr. Brown’s death; (ii) comparative fault; and (iii) damages. Before opening statements, the trial court instructed the jury that because it had determined Mr. Brown to be a member of the Engle class, the following findings were binding upon it: “One, R.J. Reynolds Tobacco Company failed to exercise the degree of care with which a reasonable cigarette manufacturer would exercise under like circumstances. Two, R.J. Reynolds Tobacco Company placed cigarettes on the market that were defective and unreasonably dangerous.” The court advised the jury that Mrs. Brown had admitted Mr. Brown was comparatively negligent.
At the close of the- evidence, the trial court instructed the jury as follows:
As I instructed you previously, a prior court decided certain issues and made certain findings that are binding on you and the parties in this case. Therefore, I am now instructing you that R.J. Reynolds Tobacco Company did the following: One, failed to exercise the degree of care that a reasonably careful cigarette manufacturer would exercise under like circumstances and placed cigarettes on the market that were defective, and unreasonably dangerous. There are two claims that have been presented to you in this case. The first is one of negligence. The issue for your determination on plaintiffs negligence claim, is whether the failure to exercise reasonable care on the part of R.J. Reynolds Tobacco Company was a legal cause of Roger Brown’s death.... Negligence is a legal cause of loss, injury or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury or damage so that it can reasonably be said that but for the negligence the loss, injury or damage would not have occurred. In order to be regarded as a legal cause of loss, injury or damage, negligence need not be the only cause. Negligence may be a legal cause of loss even though it operates in combination with some other cause, if the other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing the loss. The second claim, the issue for your determination on the plaintiffs strict liability claim is whether the defective and unreasonably dangerous cigarettes R.J. Reynolds Tobacco Company placed on the market were a legal cause of Roger Brown’s death.... A defect in a product is a legal cause of loss, injury or damage if it directly and in natural continuous sequence produces or contributes substantially to producing such loss, injury or damage so that it can reasonably be said that but for the defect the loss, injury or damage would not have occurred. In order to be regarded again as a legal cause of loss, a defect need not be the only cause, a defect may be a legal cause of loss even though it operates in combination with some other cause if the other cause occurs at the same time as the defect and if the defect contributes substantially to producing such loss.
The trial court further instructed that if the jury rendered a verdict for Mrs. Brown on either claim, it would then consider the issue of comparative fault and damages. The jury found RJR’s negli *714 gence was a legal cause of Mr. Brown’s death; RJR’s defective and unreasonably dangerous cigarettes were a legal cause of Mr. Brown’s death; and RJR and Mr. Brown were each 50% responsible for Mr. Brown’s death. The jury awarded Mrs. Brown $1.2 million in compensatory damages, which the court later reduced to $600,000 based on the jury’s apportionment of fault. The trial court entered a Final Judgment for Mrs. Brown.
On appeal, RJR primarily argues that the trial court gave the Engle findings overly broad preclusive effect, relieving the plaintiff of her burden to prove that RJR committed particular negligent acts in violation of a duty of care owed to Mr. Brown and to prove that the cigarettes Mr. Brown smoked contained a specific defect that injured Mr. Brown. RJR interprets the Florida Supreme Court’s use of the term res judicata to necessarily mean collateral estoppel or issue preclusion. Thus, in accordance with the doctrine of issue preclusion, RJR claims that post-Engle plaintiffs must demonstrate that the issues on which they seek preclusion were “actually litigated” in the prior Engle trial. RJR also contends the trial court erred in permitting Mrs. Brown to prove Mr. Brown’s addiction to cigarettes solely through lay opinion testimony.
Mrs. Brown contends the Florida Supreme Court clearly held the Engle findings were to be given res judicata effect, and not merely analyzed through the doctrines of issue preclusion or collateral es-toppel. Mrs. Brown argues that res judi-cata bars relitigation of causes of action and claims as a whole, not just the particular issues “actually litigated” in the prior action. She submits the trial court properly applied the Engle findings as the supreme court intended, and requests an affirmance. On the issue of addiction, she maintains that Florida law neither requires expert testimony nor prohibits lay opinions. Furthermore, she asserts that nothing in Florida law prevents juries from relying on a combination of expert and corroborating lay testimony. Consequently, the trial court did not err in allowing lay testimony, in addition to expert testimony, concerning addiction.

Analysis

For reasons hereinafter explained, we approve the trial court’s procedure of bifurcating the trial into two phases. The first phase allowed the jury to determine whether Mr. Brown is a member of the Engle class. The second phase allowed the jury to focus on the elements of the actual claims alleged, but not otherwise established by the Engle findings.
From a jurisprudence standpoint, the issue of how to apply the Engle findings is in its infancy. Presently, two opinions have addressed the issue: R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060 (Fla. 1st DCA 2010) and Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324 (11th Cir. 2010). In Martin, the First District concluded that the Engle Phase I findings established the conduct elements of the asserted claims. Martin, 53 So.3d at 1069. Martin also determined the plaintiff in that case had proven legal causation on her negligence and strict liability claims. Id. In making that determination, the Martin court pointed to the trial court’s instruction on legal causation with respect to addiction, which established plaintiffs membership in the class. Id. We read Martin to approve the use of the class membership instruction for the dual purpose of satisfying the element of legal causation with respect to addiction and legal causation on the underlying strict liability and negligence claims.
In contrast, the Eleventh Circuit in Brown refused to give the Engle findings such broad application. Brown deter *715 mined that the Florida Supreme Court’s discussion of the res judicata effect of the Phase I findings necessarily referred to issue preclusion. 611 F.3d at 1338. Under that doctrine, “the Phase I approved findings may not be used to establish facts that were not actually decided by the jury.” Id. at 1334. Brown remanded the case to the district court to determine the scope of the factual issues decided in Engle Phase I, and then to decide “which, if any, elements of the claims [were] established” by those findings. Id. at 1336. “Until the scope of the factual issues decided in the Phase I approved findings is determined, it is premature to address whether those findings by themselves establish any elements of the plaintiffs’ claims.” Id. (emphasis added). We conclude that the Martin court did not go far enough and the Brown court went too far.
By and large, we agree with the Eleventh Circuit’s determination in Brown that the Florida Supreme Court’s reference to the res judicata effect of the Engle findings necessarily meant issue preclusion, not claim preclusion. However, we do not go as far as Brown, to require trial courts to evaluate whether any elements of post-Engle plaintiffs’ claims are established by the Engle findings. We are constrained by the Florida Supreme Court’s decision in Engle III, which held the conduct elements of certain claims were established. In Phase I of Engle, “common issues” relating to “the defendants’ conduct and the general health effects of smoking” were litigated, not the entire causes of action. Engle III, 945 So.2d at 1256; see also Rice-Lamar v. City of Fort Lauder-dale, 853 So.2d 1125, 1131 (Fla. 4th DCA 2003) (stating that issue preclusion “does not require prior litigation of an entire claim, only a particular issue”). Therefore, we conclude, as Martin did, that individual post-Engle plaintiffs need not prove the conduct elements in negligence and strict liability claims, as asserted here. Martin, 53 So.3d at 1069.
We hold that to prevail in the tobacco cases post-Engle, plaintiffs must prove more than mere class membership and damages. Like Martin, and in accordance with Engle III, the Engle findings preelu-sively establish the conduct elements of the strict liability and negligence claims as pled in this case. Those elements are not subject to relitigation. Nevertheless, the remaining elements of the underlying claims, i.e. legal causation and damages, must be proven in the second phase of trial. In so holding, we restate our approval of the trial court’s method of conducting the trial in two phases. In the first phase, the trial court properly gave an instruction on legal causation as it pertained to addiction. The jury determined Mr. Brown’s addiction to RJR cigarettes containing nicotine was a legal cause of his death, placing Mr. Brown in the Engle class. In the second phase, the trial court gave an instruction on legal causation, but this time as it pertained to the negligence and strict liability claims.
Legal causation on the issue of addiction is separate and apart from legal causation on the strict liability and negligence claims in this instance. Post-Engle plaintiffs do not satisfy their burden of proving legal causation in a strict liability or negligence claim by merely establishing class membership in the first phase of trial. To satisfy this requirement, a jury must be asked to determine (i) whether the defendant’s failure to exercise reasonable care was a legal cause of decedent’s death; and (ii) whether the defective and unreasonably dangerous cigarettes were a legal cause of decedent’s death. In the present case, the trial court correctly required the jury to make these critical determinations.
*716 It is at this point that we depart from the First District’s decision in Martin, because there specific instructions on legal causation on the negligence and strict liability claims were not given to the jury. Martin, 53 So.3d at 1064-66. In Martin, the First District conceded that causation must still be proven on the underlying claims. Id. at 1069. Nonetheless, when explaining that the plaintiff had been required to prove legal causation on her strict liability and negligence claims, the First District pointed to the trial court’s instruction on class membership. Id. The class membership instruction requires a finding that addiction is a legal cause of death. Id. Nowhere does it require a finding of legal causation on negligence or strict liability independently. Moreover, the Martin opinion sets out the other instructions given to the jury at trial, during which no mention is made of instructions given on legal causation as to negligence or strict liability. Id. at 1064-66. Notably, there was mention of a specific instruction with respect to legal causation on a conspiracy claim, lending further support to our reading of Martin. Id. at 1065-66.
By equating the legal causation instruction used on the issue of addiction with a finding of legal causation on the plaintiffs strict liability and negligence claims, the First District effectively interpreted the “res judicata” language in the Florida Supreme Court’s decision in Engle III to mean claim preclusion instead of issue preclusion. We do not read the Florida Supreme Court’s decision in Engle III so broadly, and we do not think the Florida Supreme Court intended for claim preclusion to be applied with respect to the Engle findings in subsequent trials. Accordingly, to the extent that the First District does not require a separate causation instruction for each claim, we disagree. As discussed in more detail in the special concurrence, we are concerned the preclu-sive effect of the Engle findings violates Tobacco’s due process rights, but remain compelled to follow the mandate of the supreme court. See Richards v. Jefferson County, 517 U.S. 793, 797, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) (“We have long held ... that extreme applications of the doctrine of res judicata may be inconsistent with a federal right that is ‘fundamental in character.’”) (quoting Postal Tel. Cable Co. v. City of Newport, 247 U.S. 464, 476, 38 S.Ct. 566, 62 L.Ed. 1215 (1918)).
We continue our analysis with a review of the relevant Engle findings and their application to the specific claims of this case.

Brown’s Membership in the Class

In the first phase of this trial, the jury was asked to determine whether Mr. Brown was, in fact, a member of the Engle class. The jury was instructed that certain facts were not in dispute: (i) nicotine in cigarettes is addictive; (ii) RJR cigarettes contain nicotine; (iii) Camel, Pall Mall, and Winston brand cigarettes were RJR cigarettes; (iv) smoking cigarettes causes lung cancer; and (v) smoking cigarettes causes esophageal cancer.[7] The jury determined that Mr. Brown was addicted to RJR cigarettes containing nicotine, and such addiction was a legal cause of his death. We conclude that this phase was properly conducted and find no error in the application of the Engle findings to Mr. Brown’s membership in the class. The jury was properly advised that Mr. Brown smoked cigarettes manufactured by RJR containing nicotine, that nicotine was *717 addictive, and that he died of one of the specific, enumerated diseases.

Evidence of Addiction

RJR argues that the evidence used to prove Mr. Brown’s addiction to cigarettes was insufficient because solely lay testimony was used to prove addiction. In this case, addiction was not proven solely through lay testimony. Mrs. Brown provided expert testimony from three witnesses on the behavioral indicia of nicotine addiction. One of these experts reviewed Mr. Brown’s medical records. Mrs. Brown and her daughter provided lay opinion testimony, which, when viewed with the expert testimony, supported a finding of addiction. See Peters v. Armellini Exp. Lines, 527 So.2d 266, 269 (Fla. 1st DCA 1988) (“[L]ay testimony is of probative value in establishing the sequence of events, actual inability or ability to perform work, pain, and similar factors within the actual knowledge and sensory experience of the claimant[.]”). After viewing the expert and lay testimony collectively, we hold sufficient evidence existed for a jury to conclude Mr. Brown was addicted to RJR cigarettes containing nicotine, and that this addiction was the legal cause of his death.

Brown’s Strict Liability Claim

Product liability cases under Florida law require proof of two things. Liggett Group, Inc. v. Davis, 973 So.2d 467, 475 (Fla. 4th DCA 2007) (citation omitted). First, the product is defective; and, second, the defect caused plaintiffs injuries. Id. In response to Question 3, concerning strict liability, the jury in Engle found that RJR placed cigarettes on the market that were defective and unreasonably dangerous both before and after July 1, 1974. See Engle III, 945 So.2d at 1257 n. 4.
We hold that the third Engle finding conclusively establishes the conduct portion of a strict liability claim in post-Engle actions, i.e. that RJR placed defective and unreasonably dangerous cigarettes on the market. Post -Engle plaintiffs need not reestablish that cigarettes manufactured by an Engle defendant are defective as that conduct element was determined. Moreover, the defective cigarettes manufactured by RJR were the same brands smoked by Mr. Brown.
RJR argues that post-Engle plaintiffs should be required to point to a specific defect existing in the particular cigarettes smoked in each case to benefit from the Engle finding. Such a requirement would constitute a relitigation of conduct previously determined by Engle. Nevertheless, it is essential for post-Engle plaintiffs asserting strict liability to prove the remaining elements of legal causation and damages and trial courts must instruct the jury on those elements.
Here, Mrs. Brown was required to prove the remaining elements of her strict liability claim, i e. legal causation and damages. Moreover, the trial court correctly instructed the jury on legal causation as it related to the claim, and submitted the relevant question to the jury. The jury found that the defective and unreasonably dangerous cigarettes manufactured by RJR were a legal cause of Mr. Brown’s death. Accordingly, we find no error on the strict liability claim.

Brown’s Negligence Claim

To prevail on a negligence claim, a plaintiff ordinarily has to prove the four elements: duty of care, breach of that duty, causation and damages. Gibbs v. Hernandez, 810 So.2d 1034, 1036 (Fla. 4th DCA 2002). In response to Question 8, the Engle jury determined that Tobacco failed to exercise the degree of care which a reasonable cigarette manufacturer would exercise under like circumstances. See Brown, 611 F.3d at 1327.
*718 We hold the eighth Engle finding established that: (1) RJR had a duty to exercise reasonable care which a reasonable cigarette manufacturer would exercise under like circumstances in the manufacture of the brands of cigarettes smoked by the decedent; and (2) RJR breached that duty. As with the strict liability claim, post-Engle plaintiffs are not required to reprove specific tortious conduct, i.e. that Tobacco committed particular negligent acts when asserting a negligence claim. Imposing this burden would render the Florida Supreme Court’s opinion in Engle III meaningless. We reiterate that post-Engle plaintiffs still must prove the remaining elements of each legal theory alleged. Trial courts must instruct the jury on the remaining elements, causation, comparative fault, and damages and allow the jury to make those decisions.
Mrs. Brown was required to prove legal causation, comparative fault, and damages. The trial court correctly instructed the jury and submitted the questions of legal causation as it related to the negligence claim and damages to the jury. The jury then found that RJR’s negligence was a legal cause of Mr. Brown’s death; that Mr. Brown was 50% at fault, and determined damages. We find no error.

Conclusion

The cases cited by the Florida Supreme Court in Engle III regarding prospective decertification support the proposition that in post-Engle actions the focus should be on the individualized issues of legal causation, comparative fault, and damages, and not on relitigating the conduct elements of the claims as RJR proposes. See, e.g., Slaven v. BP Am., Inc., 190 F.R.D. 649, 658 (C.D.Cal.2000) (maintaining class status “solely for the determination of liability” because “virtually all potential claimants share common factual proofs as to the conduct and behavior of Defendants” but decertifying the class for purposes of causation and damages). This Court has acknowledged that it is not free to disregard the binding precedent of the Florida Supreme Court. Harbaugh v. State, 711 So.2d 77, 83 (Fla. 4th DCA 1998).
Here, the trial court properly applied the Engle findings, instructing the jury on the issue preclusion effect of the Phase I findings, and making certain to submit the remaining elements of each legal theory to the jury for its determination. Accordingly, we affirm the final judgment.

Affirmed.

LEVINE, J., concurs.
MAY, C.J., concurs specially with opinion.

. Engle I is the interlocutory appeal to the Third District concerning the trial court’s certification of the Engle class. Engle II is the appeal from the final judgment of the trial court in the class action to the Third District. Engle III is the appeal from the Third District to the Florida Supreme Court, following the Third District's reversal of the final judgment with instructions to decertify the class.

. The cigarette companies sued in Engle were: R.J. Reynolds Tobacco Company; RJR Nabisco, Inc.; Philip Morris Incorporated (Philip Morris U.S.A.); Philip Morris Companies, Inc.; Lorillard Tobacco Company; Lor-illard, Inc.; Brown & Williamson Tobacco Corporation, individually and as successor by merger to The American Tobacco Company; Liggett Group Inc.; Brooke Group Holding Inc., and Dosal Tobacco Corp. The industry organizations are The Council for Tobacco Research-U.S.A., Inc., and The Tobacco Institute, Inc.- (collectively referred to as "Tobacco”).

.The jury found that smoking did not cause asthmatic bronchitis, infertility, or bronchio-loalveolar carcinoma. The jury found that one of the defendants, Brooke Group, Ltd., did not: sell or supply defective cigarettes until after July 1, 1974; sell or supply cigarettes in breach of an express warranty until *710 after July 1, 1974; or fail to exercise the degree of care that a reasonable cigarette manufacturer would exercise under like circumstances until after July 1, 1969. The jury also found that one of the defendants, R.J. Reynolds Tobacco Company, did not: sell or supply cigarettes in breach of an express warranty after July 1, 1974.

. The Florida Supreme Court threw out the jury’s findings with respect to question 4 [fraud and misrepresentation] and question 9 [intentional infliction of emotional distress], explaining that those findings were "nonspecific” and "inadequate” to allow a subsequent jury to consider individual questions of reliance and legal cause. Id. at 1255. The Florida Supreme Court also threw out question 10 [entitlement to punitive damages] as premature. Id. at 1269.

. The Final Judgment and Amended Omnibus Order entered in the Engle class action reflects that Camels, Pall Malls and Winstons, the brands Mr. Brown primarily smoked, were named in the Phase I jury findings. Engle v. R.J. Reynolds Tobacco, No. 94-08273, 2000 WL 33534572 at *1 (Fla.Cir.Ct. Nov.6, 2000).

. During trial, RJR moved for a directed verdict on the fraudulent concealment and conspiracy claims because Mrs. Brown failed to present evidence of detrimental reliance. The trial court granted the motion.

. These facts were stipulated to by the parties and relate to Engle findings (1) and (2) respectively.