83 So.3d 1002 (2012)
PHILIP MORRIS USA, INC.; R.J. Reynolds Tobacco Company; and Liggett Group, LLC, Appellants,
v.
James L. DOUGLAS, as Personal Representative for the Estate of Charlotte M. Douglas, Appellee.
No. 2D10-3236.
District Court of Appeal of Florida, Second District.
March 30, 2012.
*1003 William P. Geraghty of Shook, Hardy & Bacon, LLP, Miami, and Gary L. Sasso, Carlton Fields, Tampa, for Appellant Philip Morris USA, Inc.
Gregory G. Katsas, Jones Day, Washington, D.C., for Appellant R.J. Reynolds Tobacco Company.
Karen H. Curtis of Clarke Silverglate & Campbell, P.A., Miami, for Appellant Liggett Group, LLC.
Steven L. Brannock, Celene H. Humphries, and Tyler K. Pitchford of Brannock & Humphries, Tampa, and Howard M. Acosta of Law Offices of Howard M. Acosta, St. Petersburg, for Appellee.
DAVIS, Judge.
Philip Morris USA, Inc., R.J. Reynolds Tobacco Company, and Liggett Group, LLC (the Tobacco Companies), challenge the final judgment entered after jury trial which awarded James L. Douglas, as the personal representative of the Estate of Charlotte M. Douglas, $2.5 million as damages on claims based on Mrs. Douglas' smoking-related death.[1]
Mrs. Douglas began smoking cigarettes in the mid-1960s as a teen. The complaint alleged that it was her addiction to cigarettes manufactured by the Tobacco Companies that caused her to develop chronic obstructive pulmonary disease (COPD) and lung cancer, which ultimately led to her death in 2008 at the age of sixty-two.
Mr. Douglas' third amended complaint alleged claims for strict liability, negligence, breach of express and implied warranty, fraudulent concealment, and conspiracy to fraudulently conceal. Mr. Douglas originally sought both compensatory and punitive damages, but he dismissed his claim for punitive damages before trial. He did not submit a verdict form on the negligence, breach of warranty, and conspiracy to fraudulently conceal counts, and the jury did not decide those issues. The jury did find each of the named defendants strictly liable for Mrs. Douglas' death, apportioning fault as follows: 50% to Mrs. Douglas, 18% to Philip Morris, 5% to R.J. Reynolds, and 27% to Liggett. Additionally, the jury found against Mr. Douglas on the issue of Mrs. Douglas' detrimental reliance on concealment or omissions by the Tobacco Companies.
The crux of this appeal is whether the trial court erred in the application of the findings reached by a jury and affirmed by the Florida Supreme Court in the class action case Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006) (Engle III).[2] *1004 Because we conclude that it did not, we affirm the trial court's final judgment. However, because this issue is one with wide-ranging impact, we certify a question of great public importance.
In the Engle cases, the trial court certified a class made up of "[a]ll Florida citizens and residents" "and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine."[3]Id. at 1256. At trial the jury made specific findings regarding the conduct of the several tobacco companies named as defendants.[4] The Florida Supreme Court affirmed the class certification, as well as the jury's findings (1) that smoking cigarettes causes certain named diseases;[5] (2) "that nicotine in cigarettes is addictive"; (3) that the Tobacco Companies "placed cigarettes on the market that were defective and unreasonably dangerous"; (4) that the Tobacco Companies "concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both"; (5) that the Tobacco Companies "agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment"; (6) that all the Tobacco Companies "sold or supplied cigarettes that were defective"; (7) that all the Tobacco Companies "sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by" the Tobacco Companies; and (8) that all the Tobacco Companies "were negligent." Id. at 1276-77. These findings are referred to as the "Phase I findings." Id. at 1254. The issue in this appeal is how the Phase I findings are to be used in the subsequent trials for damages brought by the individual class members.
In the instant case, the trial court advised the jury that the first issue for its consideration was whether Mrs. Douglas was a member of the class. The jury was instructed as follows:
Class members are cigarette smokers who on or before November 21, 1996, suffered from a disease or medical condition legally caused by an addiction to cigarettesto smoking cigarettes containing nicotine.
. . . .

*1005 An addiction to smoking cigarettes containing nicotine is a legal cause of a disease or medical condition if it directly and in natural and continuous sequence produces or contributes substantially to producing such disease or medical condition so that it can reasonably be said that but for an addiction to cigarettes containing nicotine, such disease or medical condition would not have been suffered.
The trial court also provided the jury with a concurring cause instruction.[6] As to this first issue, the jury found that Mrs. Douglas was a member of the class, and the Tobacco Companies do not challenge that finding on appeal.
The trial court further instructed the jury that if, in fact, it did determine that Mrs. Douglas was a member of the class, then it was to accept the eight Phase I Engle findings as proven fact. As part of that instruction, the trial court spelled out for the jury each of the eight Phase I findings. The trial court also advised the jury that the Tobacco Companies "have admitted that Charlotte Douglas had chronic obstructive pulmonary disease, COPD, and lung cancer caused by cigarette smoking and that lung cancer caused her death."
The trial court further instructed:
The second issue for your determination. . . is whether smoking cigarettes manufactured and sold by one or more of the defendants was a legal cause of the death of Decedent, Charlotte Douglas. If so, you should also determine as to each defendant whether or not that defendant's cigarettes were a legal cause of the death of the decedent, Charlotte Douglas.
The trial court then advised that
[t]he smoking of defendants' cigarettes is a legal cause of loss, injury, or damage to [Mrs. Douglas] if it directly and in natural continuous sequence produce[d] or contribute[d] substantially to producing such loss, injury, or damage so that it can reasonably be said that but for smoking defendants' cigarettes, the loss, injury, or damage would not have occurred.
The verdict form included the following question: "Was smoking cigarettes manufactured by one or more of the Defendants a legal cause of CHARLOTTE DOUGLAS' death?" The jury responded affirmatively. The verdict form determined that each of the three named defendant Tobacco Companies manufactured a cigarette that was the legal cause of Mrs. Douglas' death.
The Tobacco Companies argue on appeal that the trial court erred in giving instructions that misinterpret the intent of the Florida Supreme Court's Engle III decision. They maintain that the Phase I findings do not relieve Mr. Douglas of the responsibility of proving the elements of the causes of action alleged in his complaint and that the findings did not foreclose the raising of the affirmative defenses to these causes of action. According to the Tobacco Companies, the Phase I findings only preclude the relitigation of the specific issues determined by the Engle jury and should not be read to preclude the litigation of the elements of each of the stated causes of action brought by individual *1006 class members in subsequent cases. Specifically, the Tobacco Companies argue that even though many of the issues of negligence and strict liability were determined by the Engle jury, Mr. Douglas still had to prove legal causation. That is, Mr. Douglas had to establish that Mrs. Douglas' injuries were caused by some defect in the cigarettes or by some negligent act of the Tobacco Companies. The Tobacco Companies also argue that the trial court erred in giving the concurring cause instruction in relation to the question of class membership.
We affirm the trial court's final judgment with regard to both of these issues but write only on the application of the Phase I findings to subsequent suits brought by class members. These post-Engle III suits are now beginning to appear before the appellate courts; however, this is the first time this court has considered these issues. In doing so, we first note that the Florida Supreme Court characterized the Phase I findings as follows: "The jury considered common issues relating exclusively to the defendants' conduct and the general health effects of smoking." Engle III, 945 So.2d at 1256. After determining that claims for damages must be pursued individually rather than by class action, the court concluded that "[i]ndividual plaintiffs within the class will be permitted to proceed individually with the findings set forth above given res judicata effect in any subsequent trial between individual class members and the defendants, provided such action is filed within one year of the mandate in this case." Id. at 1277 (emphasis added). The issue thus becomes what the phrase "res judicata effect" means.

The Caselaw

The Eleventh Circuit's Brown Decision
We begin our analysis with a review of three similar appealstwo decided by Florida state appellate courts and one by the Eleventh Circuit Court of Appeal. In the federal appellate case, the Eleventh Circuit reviewed an interlocutory order by which the trial court determined that the Phase I "`findings [could] not be given preclusive effect in any proceeding to establish any element of an Engle Plaintiff's claim.'" Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1329 (11th Cir.2010) (alteration in original) (quoting Brown v. R.J. Reynolds Tobacco Co., 576 F.Supp.2d 1328, 1348 (M.D.Fla.2008)). The Eleventh Circuit noted that the Florida Supreme Court in Engle III specifically stated that the eight findings of the trial court should be given res judicata effect in subsequent actions brought by class members. Id. at 1331. However, the court recognized that "[t]he term `res judicata' . . . can refer specifically to claim preclusion or it can refer generally to the preclusive effect of earlier litigation. When the term has that second meaning, it encompasses claim preclusion and issue preclusion, and it can mean either or both." Id. at 1331-32 (citation omitted). The Eleventh Circuit then concluded as follows:
The defendants had their day in court on the "common issues" of fact that were decided in Phase I, and later approved by the Florida Supreme Court, but they did not have their day in court on the broader questions involving the causes of action the class asserted, which were left undecided. See Engle III, 945 So.2d at 1263.
Because factual issues and not causes of action were decided in Phase I, the Florida Supreme Court's direction that the approved findings were to have "res judicata effect" in future trials involving former class members necessarily refers to issue preclusion.
Id. at 1333.
However, the federal court pointed out that the parties disagreed as to what issue *1007 preclusion meant, giving the following example:
Question 3 on the verdict form asked the jury: "Did one or more of the Defendant Tobacco Companies place cigarettes on the market that were defective and unreasonably dangerous?" The jury answered "yes[ ]" for every time period for every defendant except Brooke Group, Ltd., Inc. Under the defendants' view, the only fact that the jury found was that they sold some cigarette that was defective and unreasonably dangerous during the time periods listed on the verdict form. That would mean that the finding may not establish anything more specific; it may not establish, for instance, that any particular type or brand of cigarette sold by a defendant during the relevant time period was defective and unreasonably dangerous. Under the plaintiffs' broader view[,] the jury's finding must mean that all cigarettes the defendants sold were defective and unreasonably dangerous because there is nothing to suggest that any type or brand of cigarette is any safer or less dangerous than any other type or brand.
Id. at 1335 (footnote omitted).
The Eleventh Circuit went on to observe that the plaintiffs had not pointed to anything in the transcript of the Engle trial that showed that the jury made such specific findings. Id. Accordingly, the court vacated the federal trial court's determination that the Phase I findings could not be used to establish any element of the complaint and advised the trial court that the findings were entitled to res judicata effect as to the factual issues that were litigated and specifically resolved in the record. Id. The Eleventh Circuit then instructed the trial court on remand to determine what particular issues were litigated and resolved in Phase I and then to preclude the defendant tobacco companies from relitigating those issues. Id. at 1336. However, the Eleventh Circuit concluded that any issue not specifically designated by the record must be proven by the plaintiffs in the case before the trial court. Id.

The First District's Martin Opinion
In R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060 (Fla. 1st DCA 2010), the First District reviewed a final judgment entered in favor of an Engle class member that was based on treating the eight Phase I findings as res judicata in a manner similar to the proceedings in the instant case. In Martin, R.J. Reynolds argued that even with the application of the class findings, the class member
was required to prove [that] Lucky Strike brand cigarettes contained a specific defect rendering the brand unreasonably dangerous; [that R.J. Reynolds] violated a duty of care it owed to [the class member]; [that R.J. Reynolds] concealed particular information which, had it been disclosed, would have led [the class member] to avoid contracting lung cancer; and [that R.J. Reynolds] was part of a conspiracy to conceal the specified information.
Id. at 1066.
R.J. Reynolds relied on the Eleventh Circuit's Brown language that limited the res judicata effect to that of issue preclusion rather than claim preclusion because only factual issues were decided by the jury in Engle. Id. at 1067. The Martin court reacted to Brown as follows:
While we generally agree with the Eleventh Circuit's analysis of issue preclusion versus claim preclusion, we find it unnecessary to distinguish between the two or to define what the supreme court meant by "res judicata" to conclude the factual determinations made by the Phase I jury cannot be relitigated by [R.J. Reynolds] and the other Engle defendants. More importantly, we do not agree every Engle plaintiff must trot *1008 out the class action trial transcript to prove applicability of the Phase I findings. Such a requirement undercuts the supreme court's ruling. The Phase I jury determined "common issues relating exclusively to the defendants' conduct. . ." but not "whether any class members relied on Tobacco's misrepresentations or were injured by Tobacco's conduct." Engle, 945 So.2d at 1256 (emphasis added). The common issues, which the jury decided in favor of the class, were the "conduct" elements of the claims asserted by the class, and not simply, as characterized by the Eleventh Circuit, a collection of facts relevant to those elements.
Id.
The First District concluded that the Phase I findings on these common issues sufficiently proved the elements of the several causes of action except for the requirement of a causal connection for each cause of action, detrimental reliance for the fraudulent concealment claim, and proof of resulting damages for each claim. Id. at 1068. The court cited the Final Judgment and Omnibus Order entered by the Engle trial court as conclusive on each of the elements of the causes of action. Id. Having determined that the Engle jury made factual findings on the elements, the First District then concluded that the Martin trial court properly relied on the Phase I findings and that there was no need for the plaintiff class member to "independently prove up those elements or demonstrate the relevance of the findings to their lawsuits, assuming they assert the same claims raised in the class action." Id. at 1069.

The Fourth District's Brown Decision
Subsequently, in R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707 (Fla. 4th DCA 2011),[7] the Fourth District reviewed the Phase I findings in light of both the Eleventh Circuit's opinion in Brown and the First District's Martin decision. The Fourth District read the Martin decision to suggest that the Phase I findings had established the conduct elements of the asserted claims and that Mrs. Martin had proven legal causation on her negligence and strict liability claims. However, the Fourth District noted that the First District in Martin "approve[d] the use of the class membership instruction for the dual purpose of satisfying the element of legal causation with respect to addiction and legal causation on the underlying strict liability and negligence claims." 70 So.3d at 714.
The Fourth District then addressed the Eleventh Circuit's conclusion in its Brown case that the Florida Supreme Court's reference to res judicata in Engle III was limited to issue preclusion. The Fourth District concluded that although "the Martin court did not go far enough[,] the [Eleventh Circuit] went too far." Id. at 715. The Fourth District "[b]y and large" agreed with the Eleventh Circuit that the Florida Supreme Court's reference to res judicata in Engle III meant issue preclusion but not claim preclusion. Id.
However, we do not go as far as [the Eleventh Circuit in] Brown to require trial courts to evaluate whether any elements of post-Engle plaintiffs' claims are established by the Engle findings. We are constrained by the Florida Supreme Court's decision in Engle III, which held the conduct elements of certain claims were established. In Phase I of Engle, "common issues" relating to "the defendants' conduct and the general health effects of smoking" were litigated, not the entire causes of action. Therefore, we conclude, as Martin did, that individual post-Engle plaintiffs need not prove *1009 the conduct elements in negligence and strict liability claims, as asserted here.
Id. (citations omitted).
The Fourth District went on to state that a class member must prove more than class membership and damages to prevail. The Phase I "findings preclusively establish the conduct elements of the strict liability and negligence claims. . . . Nevertheless, the remaining elements of the underlying claims, i.e.[,] legal causation and damages, must be proven in the second phase of trial." Id. Additionally, the court noted that the legal causation for negligence and strict liability is distinguishable from the causation that proves addiction resulting in class membership. To satisfy the "burden of proving legal causation in a strict liability or negligence claim" post-Engle III plaintiffs must show "(i) [that] the defendant's failure to exercise reasonable care was a legal cause of decedent's death[ ] and (ii) [that] the defective and unreasonably dangerous cigarettes were a legal cause of decedent's death." Id. The Fourth District disagreed with the First District's opinion in Martin on this point because there were no specific instructions on legal causation on the negligence and strict liability claims given to the Martin jury. The Fourth District concluded that by allowing the legal causation instruction used on the issue of addiction to justify a finding of legal causation on the strict liability and negligence claims, the Martin court read the Florida Supreme Court's res judicata language in Engle III to be that of claim preclusion instead of issue preclusion. The Fourth District rejected such a conclusion. Id. at 716.
In analyzing the facts of its Brown case, the Fourth District looked at the individual claims as they related to the Phase I findings. In regard to strict liability, the court concluded that the Phase I findings determined that R.J. Reynolds placed cigarettes on the market that were defective and unreasonably dangerous and that this established the conduct portion of a strict liability claim in post-Engle III actions. Id. at 717. The court noted that the cigarettes smoked by the plaintiff were the same brand manufactured by R.J. Reynolds. Id. The court rejected R.J. Reynolds' argument that the plaintiff should be required to point out the specific defect existing in specific cigarettes before being entitled to the benefit of the Phase I finding on this issue. Id. The court noted, however, that for the plaintiff to prevail on the strict liability theory, instructions on the remaining elements of legal causation and damages must be given and the jury must make the necessary findings. Id. The court approved the trial court's bifurcating the proceeding to allow the jury to first consider class membership and then subsequently consider the causes of action based on the application of the Phase I findings. Id. An instruction on causation was given to the jury during the first proceedings, and the jury found that the plaintiff was a member of the class. Id. Because a second instruction was given and the jury found for the plaintiff on legal causation during the second proceeding, the Fourth District affirmed the award on the theory of strict liability. Id.
Likewise on the negligence claim, the Fourth District found that the Phase I findings established the elements of duty to exercise reasonable care and a breach of that duty by R.J. Reynolds. Id. at 718. The court stated that post-Engle III plaintiffs are not required to litigate these issues again but that trial courts must instruct juries on the issues of legal causation, comparative fault, and damages and allow juries to make findings as to each issue. Id. Again, because the trial court in Brown properly instructed the jury and the jury made the necessary findings during the second proceeding, the Fourth *1010 District affirmed the award on the negligence theory. Id.

Analysis
With these three cases in mind, we now turn our attention to the facts and record before us. We agree with the Fourth District's conclusions that the Florida Supreme Court's language in Engle III clearly states that the jury findings in that case are binding on future claims as to the issues of the Tobacco Companies' conduct. The supreme court described those findings as "common issues relating exclusively to the defendants' conduct and the general health effects of smoking." Engle III, 945 So.2d at 1256. The supreme court then concluded that "[c]lass members can choose to initiate individual damages actions and [that] the Phase I common core findings . . . will have res judicata effect in those trials." Id. at 1269.
We also agree with the Fourth District in concluding that to require post-Engle III plaintiffs to relitigate issues related to the Tobacco Companies' conduct and the general health effects of smoking would undercut the intent of the Florida Supreme Court's Engle III decision. As such, like the Fourth District, we reject the Tobacco Companies' argument that post-Engle III plaintiffs should be required to prove specific defects existing in specific cigarettes.
We further note that we do not read the Fourth District's opinion in Brown to require a bifurcated trial court proceeding but rather only to require that the jury be instructed on legal causation separately for the consideration of class membership and then again for consideration of the cause of action.
Because the Engle Phase I findings are accepted as to the conduct of the Tobacco Companies and the health effects of smoking, to prevail on the theory of strict liability in the instant case, Mr. Douglas needed only to prove legal causation and damages on his claims. The verdict form clearly posed the question of legal causation to the jury, and the jury made a finding that Mrs. Douglas' diseases were legally caused by her smoking cigarettes manufactured by the Tobacco Companies. That coupled with the Phase I finding that the cigarettes were "defective and unreasonably dangerous" amounts to strict liability. We therefore affirm the final judgment based on a theory of strict liability.[8]
Finally, the Tobacco Companies also argue that the Eleventh Circuit in its Brown case concluded that to allow res judicata to apply to the Phase I findings would be a violation of their due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. This argument was rejected by both the First District in Martin and the Fourth District in Brown. Furthermore, this position more recently has been rejected by the U.S. District Court for the Middle District of Florida in Waggoner v. R.J. Reynolds Tobacco Co., No. 3:09-cv-10367-J-37JBT, ___ F.Supp.2d ___, 2011 WL 6371882 (M.D.Fla. Dec. 20, 2011). We too reject this argument.
We do agree, however, that the issue is one that will be applicable to the many individual class member cases now being *1011 considered by the trial courts of this state. Accordingly, pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v) and article 5, section 3 of the Florida Constitution, we certify the following question as being one of great public importance:
DOES ACCEPTING AS RES JUDICATA THE EIGHT PHASE I FINDINGS APPROVED IN ENGLE V. LIGGETT GROUP, INC., 945 So.2d 1246 (Fla. 2006), VIOLATE THE TOBACCO COMPANIES' DUE PROCESS RIGHTS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION?
Affirmed; question certified.
WHATLEY, J., Concurs.
ALTENBERND, J. Concurs with opinion.
ALTENBERND, Judge, Concurring.
I fully concur in the court's opinion. I write only to note that the parties in this case, in addition to submitting excellent briefing, provided copies of the several sets of jury instructions used in the other cases cited in the court's opinion. Given the number of pending cases that are affected by Engle III, it might be helpful if the supreme court approved a standard set of jury instructions for use in Engle cases.
NOTES
[1] The original complaint was filed by Mr. and Mrs. Douglas; however, Mrs. Douglas died during the pending litigation, and the lawsuit was amended to become a wrongful death suit.
[2] The caselaw refers to the Florida Supreme Court's Engle decision as Engle III, Engle I being the Third District's opinion affirming the trial court's order certifying the class, see R.J. Reynolds Tobacco Co. v. Engle, 672 So.2d 39, 40 (Fla. 3d DCA 1996), and Engle II being the Third District's opinion reversing the ultimate final judgment in that class action, see Liggett Group, Inc. v. Engle, 853 So.2d 434 (Fla. 3d DCA 2003).
[3] The trial court originally certified the class as "[a]ll United States citizens and residents, and their survivors, who have suffered, presently suffer or have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." Engle I, 672 So.2d at 40. However, in an interlocutory review of the order certifying the class, the Third District limited the class to Florida citizens and residents. Id. at 42.
[4] The named defendants in the Engle cases were Liggett Group, Inc.; Brook Group Ltd.; Philip Morris, Inc.; Council for Tobacco Research-USA, Inc.; Tobacco Institute, Inc.; Lorillard Tobacco Co.; Lorillard, Inc.; Brown & Williamson Tobacco Corp.; American Tobacco Co.; and R.J. Reynolds Tobacco Co. As such, the three named defendants in the instant case were all parties to the Florida Supreme Court's decision in Engle III.
[5] The Engle jury's finding included "aortic aneurysm, bladder cancer, cerebrovascular disease, cervical cancer, [COPD], coronary heart disease, esophageal cancer, kidney cancer, laryngeal cancer, lung cancer (specifically, adenocar[c]inoma, large cell carcinoma, small cell carcinoma, and squamous cell carcinoma), complications of pregnancy, oral cavity/tongue cancer, pancreatic cancer, peripheral vascular disease, pharyngeal cancer, and stomach cancer." Engle III, 945 So.2d at 1277.
[6] Specifically, the trial court instructed the jury as follows: "An addiction to cigarettes containing nicotine may be a legal cause of a disease or a medical condition even though it operates in combination with the act of another or some natural cause or some other cause if such other cause occurs at the same time as an addiction to cigarettes, and if such an addiction to cigarettes contributes substantially to producing a disease or medical condition."
[7] This case is unrelated to the Eleventh Circuit's Brown decision discussed herein.
[8] We note that the complaint alleged a count for negligence and that the trial court instructed the jury on negligence. However, the verdict form did not ask the jury if it was the Tobacco Companies' failure to exercise reasonable care that was the legal cause of Mrs. Douglas injury. As such, we must agree with the Tobacco Companies' argument that the jury did not make a finding of legal causation as related to the theory of negligence. But our affirming the final judgment on a theory of strict liability renders this argument moot.